```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
                                        :
VECTOR MEDIA GROUP, INC.,               :
                                        :
        Plaintiff,                      :
                                        :     20 Cv. 5642 (JSR)
        -v-                             :
                                        :     MEMORANDUM ORDER
                                        :
MYLOCKER.COM, LLC, et. al.,             :
                                        :
        Defendants.                     :
---------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On May 26, 2020, petitioner Vector Media Group, Inc. brought the instant action to confirm an arbitration award entered on March 27, 2020 against respondents MyLocker.com, LLC ("MyLocker") and All Americanlook, Inc.[1] ("All American"). On July 28, 2020 – more than four months after entry of the award – respondents cross-moved to vacate the arbitration award. Because respondents' vacatur motion is untimely under the Federal Arbitration Act (the "FAA"), the Court denies respondents' cross-motion to vacate and correspondingly grants petitioner's motion to confirm the award. The Court also grants petitioner's request for attorneys' fees incurred in connection with this confirmation proceeding and refers the matter

---

[1] All Americanlook, Inc. is apparently wrongly identified in petitioner's petition as "All American Manufacturing and Supply." See Memorandum of Law in Support of Respondents' Answer and Opposition to Petition to Confirm, and in Support of Cross-Petition to Vacate, Arbitration Award ("Resp. Mem."), Dkt. No. 8-9, at 1 n.1.

to the designated Magistrate Judge for an inquest into the proper amount.

I.   Factual Background

   A. The Underlying Contract Dispute

Around September 2010, petitioner, a digital agency, contracted with MyLocker to provide search engine optimization and related e-commerce services. Verified Petition ("Pet."), Dkt. No. 1-1, ¶¶ 6-8. Seven years later, MyLocker's owner approached petitioner about performing similar services for another company that he owned, All American. Id. ¶ 9. In September 2017, All American and petitioner entered into an agreement to be governed by the same terms as the initial agreement between MyLocker and petitioner. Id. ¶ 10.

That agreement contains a mandatory arbitration clause, which provides for the prevailing party "to recover from the non-prevailing party all of the fees and expenses, including lawyers' and expert witness' fees, arbitrator's fees and amounts paid to JAMS or any other organization administering the arbitration, incurred by the prevailing party in connection with such arbitration." Id. ¶¶ 11, 12.

Petitioner alleges that, in late 2017, MyLocker and All American began missing payment deadlines. Id. ¶¶ 15, 17. As a result of these missed payments, petitioner alleges, MyLocker owed petitioner $63,134.08, while All American owed petitioner $6,000. Id. ¶¶ 16-17.

   B. The Arbitration Proceedings

On November 27, 2018, petitioner filed a demand for arbitration with JAMS, seeking to recover for those missed payments. Dkt. No. 1-1 at 38. Respondents were represented by Matthew Novello, Esq., see Dkt. No. 1-1 at 48, who participated in the early portions of the arbitration. For example, he was served with, and received, the initial pleadings by email, Dkt. No. 8-1, ¶ 6, and he submitted an answer and counterclaims on behalf of respondents in March 2019, id. ¶ 5; Dkt. No. 1-1, at 77.

Despite Mr. Novello's early participation in the proceedings, he effectively fell off the grid in late 2019. Between August 6, 2019 and November 6, 2019, Mr. Novello failed to reply to at least 22 emails from petitioner's counsel and JAMS. See Dkt. No. 12-1. He also failed to answer numerous phone calls and letters. Pet. ¶ 27.

On November 6, 2019, Mr. Novello reappeared and replied to an email from petitioner's counsel, explaining that his "email was hacked about a month ago [i.e., around October 2019] and the recovery put a bunch of legitimate emails in spam." Dkt. No. 12-6. He further explained that he is "still trying to recover . . . but as a consequence, I missed some recent dialogue lately." Id. Mr. Novello did not explain why he had failed to answer emails sent between August and October (before the alleged "hack"), or why he had failed to answer the phone calls and paper mail (communications that, one would imagine, would be unaffected by an email hack). He also did not explain why, despite his knowledge of the ongoing arbitration, he neglected to inform the arbitrator or petitioner's

counsel of his technological troubles or to provide them with his alternative email address.

That same day, JAMS sent to counsel via email a notice of a conference call scheduled for November 12, 2019. Dkt. No. 12-5. Mr. Novello participated in that call. See Resp. Mem. at 2. Following that call, Mr. Novello briefly stayed engaged, sending a few logistical emails to petitioner's counsel. See Dkt. Nos. 12-7, 12-8, and 12-9.

In December 2019, the parties had a dispute over Mr. Novello's communications with a former employee of petitioner. On December 9, petitioner's counsel sent a letter, via email and mail, to Mr. Novello asking him to cease and desist such communications. Dkt. No. 12-10. Petitioner's counsel also called and left a message to the same effect. Dkt. No. 12-11. When Mr. Novello failed to respond to this outreach, petitioner's counsel sent another email on December 19, 2019. Dkt. No. 12-4 at 118. Mr. Novello answered the next day and suggested setting up some time to speak the following week. Dkt. No. 12-11. But Mr. Novello failed to answer follow-up emails on that thread and the conversation never came to fruition. See Dkt. No. 12-4 at 120, 122.

Soon thereafter, petitioner's counsel requested that JAMS schedule a conference call with all counsel and the arbitrator to address Mr. Novello's failure to meaningfully participate in the arbitration. Dkt. No. 12-4 at 124. JAMS then asked counsel to provide their availability, but Mr. Novello did not respond to that

4

email or subsequent follow-up requests. Dkt. Nos. 12-4 at 130, 133, 134, 139. Eventually, and without input from Mr. Novello, the call was scheduled for January 15, 2020. Dkt. No. 12-4 at 141. Mr. Novello did not appear on the call. Dkt. No. 1-1 at 13-14. In light of Mr. Novello's failure to appear, petitioner's counsel sought, and the arbitrator granted, leave to submit a default judgment application. Dkt No. 1-1 at 14

On January 27, 2020, petitioner filed its motion for summary judgment. Dkt. No. 12-1. The motion was served on Mr. Novello by both email and mail. Dkt. No. 12-3. On January 30, 2020, the arbitrator issued a scheduling order, which was served by both email and mail, giving respondents until February 17, 2020 to submit any opposition to petitioner's motion. Dkt. No. 1-1 at 98-100. No opposition was filed.

On March 17, 2020, the arbitrator issued the Amended Final Award,[2] a copy of which was sent to Mr. Novello via email. Dkt. No. 1-1, at 12-15. After summarizing respondents' repeated failures to participate in the arbitration, the arbitrator entered an award in favor of petitioner "by reason of Respondents' default." Id. at 15. The award, which included interest and fees, required MyLocker to pay petitioner $135,778.57 and required All American to pay

---

[2] The arbitrator initially issued an award on March 10, 2020, but that award misstated the amounts owed to petitioner. Dkt. No. 1-1 at 6 n.1. On March 16, 2020, petitioner's counsel identified the error for the arbitrator, who soon thereafter issued the amended award. Id.

5

petitioner $7,210.19. Id. at 18.

## C. Procedural History

On May 26, 2020, petitioner brought this petition in New York State Supreme Court, seeking confirmation of the award. Dkt. No. 1 at 2. Respondents were served on July 13 and 15, 2020 and removed the action to this Court on July 16, 2020. Dkt. Nos. 1, 5, 6. On July 28, 2020, respondents submitted their answer to the petition and cross-moved to vacate the award. Dkt. No. 8. After full briefing, the matter is now ripe for decision.

## II. Legal Analysis

Petitioner seeks to confirm the arbitration award and to recover attorneys' fees incurred over the course of this confirmation proceeding. Respondents ask the Court to vacate the arbitration award on the grounds that (1) the arbitrator committed misconduct by issuing an award where respondents, because of Mr. Novello's trouble with his email, did not "receive notice of significant events that took place in the underlying arbitration after November 12, 2019"; and/or (2) the arbitrator exceeded his powers by entering the award "solely on the basis of default" allegedly in violation of the relevant JAMS procedures. Letter from Respondents' Counsel to the Court dated August 21, 2020 ("Resp. Supp. Mem."), Dkt. No. 13, at 4.

As a threshold matter, however, petitioner contends that respondents' cross-motion to vacate is untimely. The Court agrees with petitioner and therefore denies respondents' vacatur motion

without reaching the merits.

   A. Respondents' Vacatur Motion is Untimely

   Confirmation of an arbitration award is ordinarily "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).³ Indeed, a "court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" Id. (quoting 9 U.S.C. § 9). Under the FAA, however, any motion to vacate an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. In the Second Circuit, "[t]his three-month limitation is absolute and strictly construed." Milberg LLP v. HWB Alexandra Strategies Portfolio, No. 19-cv-4058, 2020 WL 3833829, at *4 (S.D.N.Y. Jul. 8, 2020). Thus, "a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984). "Although it is important to the fair administration of arbitration that a party have the means to vacate an unjustly procured award, there is also good reason for the Act's three month limitation on this right," id. at 176, namely, "settling disputes efficiently and avoiding long and expensive litigation," Folkways

---

³   Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

7

Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993).

Here, the award was issued on March 17, 2020. Dkt. No. 1-1 at 18. It was sent, via email, to Mr. Novello that same day. Id. at 19. Thus, respondents had until June 17, 2020 to pursue vacatur. They did not. On a plain reading of the statute, then, respondents' motion must be denied as untimely.

Respondents argue, however, that — notwithstanding the fact that the award was entered and emailed on March 17, 2020 — the award was not "filed or delivered" until respondents were served with a copy of petitioners' papers in this matter on July 13, 2020. See Resp. Supp. Mem. at 4-5. Starting the clock on July 13, 2020, respondents explain, would give them until October 13, 2020 to seek vacatur. Id. at 5.

There are at least two problems with respondents' argument. The first, and most significant, is that they have cited no case law to suggest that the clock starts at any point other than the date the award is entered. Courts in this district routinely start counting from the date of entry, see, e.g, Guerrero v. FJC Sec. Services Inc., Nos. 12-cv-5763, 13-cv-1204, 2013 WL 5273795, at *4 (S.D.N.Y. Sept. 18, 2013) ("The three months begins accruing from the date of the award.") Indeed, courts have so held even where, as here, petitioner contends it lacked notice of the award. See Marsillo v. Geniton, No. 03-cv-2117, 2004 WL 1207925, at *5 (S.D.N.Y. Jun. 1, 2004) (finding vacatur motion untimely where it was filed "more than three months after the award was filed or sent to [petitioner's]

8

residence," even though petitioner complained he did not have "proper notice of the proceedings, the hearings or any award").

Second, even if the doctrine allowed for equitable tolling where a party truly lacked notice of the arbitration proceedings,[4] the Court would not be remotely inclined to make such an exception here. Mr. Novello was fully aware of – and, indeed, participated in – the arbitration proceeding. Even if, through no fault of his own, he did not receive certain communications from petitioner's counsel or JAMS, his months-long failure to provide substitute contact information, appraise petitioner's counsel and the arbitrator of his technological snafus, or even simply inquire into the status of the ongoing arbitration, "suggest[s] that [he] simply chose to ignore the arbitration proceedings." Marsillo, 2004 WL 1207925, at *6. In a word, then, equity is not on respondents' side.

Respondents' cross-motion to vacate is therefore denied and petitioner's motion to confirm the award is correspondingly granted.

B. <u>Petitioner is entitled to Attorneys' Fees and Post-Judgment Interest</u>

Petitioner also argues that it is entitled to recover attorneys' fees incurred as a result of this confirmation proceeding. See Reply Memorandum of Law in Support of Petition to Confirm the Arbitration Award, Dkt. No. 11, at 10; Surreply

---

[4] Itself a dubious proposition. See Florasynth, 750 F.2d at 175 ("[T]here is no common law exception to the three month limitations period on the motion to vacate.")

Memorandum of Law in Support of Petition to Confirm the Arbitration Award ("Surreply"), Dkt. No. 14, at 5.

"A federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004). Here, the agreement between petitioner and respondent provides: "The party that prevails in any arbitration pursuant to this provision shall be entitled to recover from the non-prevailing party all of the fees and expenses, including lawyers' and expert witness' fees, arbitrator's fees and amounts paid to JAMS or any other organization administering the arbitration, incurred by the prevailing party in connection with such arbitration." Pet. ¶ 12. Because petitioner's motion to confirm and respondents' cross-motion to vacate the award are both "in connection with" the arbitration, the Court grants petitioner's request for attorneys' fees. However, because the amount of attorneys' fees is unclear at this point, the Court refers the matter to the designated Magistrate Judge for an inquest into the proper amount.

Finally, petitioner contends that it is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961, which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Surreply at 5. Because § 1961 applies to actions to confirm arbitration awards, see Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund,

Annuity Fund v. DV I, LLC, No. 17-cv-7367, 2018 WL 461244, at *6 (S.D.N.Y. Jan. 18, 2018) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100-01 (2d Cir. 2004)), the Court awards interest to accrue at the statutorily specified rate from the date judgment is entered until payment is made.

    SO ORDERED.

Dated: New York, NY
      September 8, 2020

                                JED S. RAKOFF, U.S.D.J.